# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

NATIONAL MUTUAL INS. CO,

      Plaintiff,

and

FOREMOST INS. CO.,

      Intervenor Plaintiff,

vs.

DOUGLAS KOBUSCH and LINDA KOBUSCH,

      Defendants.

Case No. 22-CV-98-KEM

**MEMORANDUM OPINION AND ORDER**

---

This case requires the court to determine the meaning of "public roads" in an underinsured motorist coverage insurance policy. Specifically, the parties dispute whether a "public road" encompasses an unpaved one-lane path in a public park commonly used by Jeeps, ATVs,[1] dirt bikes, and other vehicles, and which Google Maps shows as a road; but which city officials state was not legally open for vehicular travel (although no signs or barricades on the path made that obvious).

Plaintiff National Mutual Insurance Co. filed a complaint seeking a declaratory judgment that its underinsured motorist policy, insuring Defendants Douglas and Linda Kobusch, excluded coverage for an accident involving Douglas Kobusch. Doc. 1. Foremost Insurance Co. intervened as a Plaintiff, seeking the same. Doc. 8. The parties consented to the exercise of jurisdiction by a United States magistrate judge, and the case was assigned to me for final disposition. Doc. 14. National Mutual and Foremost

---

[1] All-Terrain Vehicles.

(collectively, the Insurance Companies) move for summary judgment, arguing that the exclusion for vehicles "designed mainly for use off public roads while not upon public roads" unambiguously applies to exclude underinsured motorist coverage here. Docs. 19, 20. The Kobusches responded, agreeing that medical-expenses coverage is inapplicable but resisting the grant of summary judgment on underinsured motorist coverage. Doc. 26. The Kobusches agree that the ATV involved in the accident was "designed mainly for use off public roads," but they dispute that it was "not upon public roads" at the time of the accident. The Insurance Companies filed reply briefs (Docs. 29-30), and the Kobusches filed a surreply (Doc. 38). I heard oral argument on October 19, 2023. Doc. 41.

At oral argument, the Insurance Companies argued (for the first time) that the Kobusches' and Raymond Marin's supplemental affidavits should not be considered, as they contained legal conclusions not based on personal knowledge, to the extent they opined that a reasonable person would consider the route at issue here a "public road." In response, the Kobusches moved for leave to file a new affidavit, eliminating references to case names and other legal arguments sprinkled throughout their original affidavit. Doc. 42. The Insurance Companies resisted on timeliness grounds. Docs. 43, 44. Because the Insurance Companies did not move to strike the supplemental affidavits originally submitted by the Kobusches, I do not find the new affidavits untimely. Ultimately, however, I do not find the new affidavits change the outcome of the Kobusches reasonable-expectations argument. And I will not consider statements in the affidavits that are legal conclusions not based on personal knowledge. I **grant t**he Kobusches' motion for leave to file an amended supplemental affidavit (Doc. 42).

I agree with the Kobusches that the meaning of "public roads" in the insurance policy is ambiguous as to whether it includes the unpaved road involved in the accident in this case (when the facts are viewed in the Kobusches' favor). Because the Kobusches agree that medical-expenses coverage does not apply, I **grant in part and deny in part** the Insurance Companies' motions for summary judgment (Docs. 19, 20).

2

# I.    BACKGROUND[2]

On January 30, 2022, Defendant Douglas Kobusch rode as a passenger in a CAN-AM ATV owned and operated by Steven Anderson.  The vehicle overturned, and Kobusch sustained serious injuries (when I refer to Kobusch singularly, I am referring to Douglas Kobusch).  An independent witness, Marin, came upon the scene of the accident shortly after it occurred.  The parties agree the accident happened in Casa Grande Mountain Park, owned by the city of Casa Grande, Arizona.

At the time of the accident, Kobusch had insurance policies with Plaintiffs National Mutual and Foremost that provided for underinsured motorist coverage and medical expenses coverage.  Both policies' underinsured motorist coverage excluded coverage for vehicles "designed mainly for use off public roads while not upon public roads."  The medical expenses coverage for both policies applied only when the insured was occupying "a motor vehicle designed for use mainly on public roads."

The manufacturer of CAN-AM ATVs claims they are not intended for use on paved surfaces or public roads and specifically describes them as "off-road" and "off-highway" vehicles.  The State of Arizona permits CAN-AM ATVs on its public roads, however, as long as the owner of the vehicle pays a separate annual fee.  Anderson had paid this fee at the time of the accident.

The parties agree that Casa Grande Mountain Park contains hiking trails, but they dispute whether it additionally contains roads for motorized vehicles.  The Insurance Companies point to pictures of Casa Grande Mountain Park taken by the claims adjuster.

---

[2] Facts without a citation in this section are taken from National Mutual's Statement of Facts admitted by the Kobusches in their response thereto (Docs. 19-2, 26-2); Foremost's Statement of Facts admitted by the Kobusches in their response thereto (Docs. 20-2, 26-3); or the Kobusches Statement of Facts admitted by National Mutual and Foremost in their response thereto (Docs. 26-2, 26-3, 29-1, 30-1).

Nat. App. 72-96.[3] They also rely on an email from the Kobusches' counsel with attached video and screenshots of the aftermath of the accidents, which includes metadata of the accident's location. Nat. App. 106-112. The Insurance Companies further point to printouts from the Facebook account for Casa Grande Mountain Park and the website for the City of Casa Grande, as well as a video from the latter website. Nat. App. 102-105; Nat. Supp. App. 113-121, 123. In addition, the Insurance Companies submitted an affidavit from the Parks Superintendent of the City of Casa Grande. Nat. Second Supp. App. 124-127. Finally, the Insurance Companies submitted a video of a City of Casa Grande employee discussing the Casa Grande Mountain Park (they did not include any information on where they obtained this video). Nat. Supp. App. 122.

In response, the Kobusches submitted affidavits from three persons: Kobusch, Anderson, and Marin. Kobusch App. 2-36; Kobusch Supp. App. 52-67. They also rely on pictures Marin took and screenshots from Google Earth and the Facebook account for Casa Grande Mountain Park. *Id.* To aid the court in orienting the trail map from the Insurance Companies with the Kobusches' maps, I also take judicial notice of the map of the area from Google Maps (which is consistent with the parties' provided maps and Anderson's affidavit).[4]

---

[3] "Nat. App." refers to National Mutual's Appendix filed at Doc. 19-3; "Foremost App." refers to Foremost's Appendix filed at Doc. 20-3; "Kobusch App." refers to the Kobusches' Appendix filed at Doc. 26-4 (the court reviewed the electronic version of the Appendix containing high-resolution images separately mailed to the court); "Nat. Supp. App." refers to National Mutual's Supplemental Appendix filed at Doc. 29-2; "Nat. Second Supp. App." refers to National Mutual's Second Supplemental Appendix filed at Doc. 36-1; and "Kobusch Supp. App." refers to the Kobusches Supplemental Appendix filed at Doc. 38-1. At oral argument, all parties indicated no objection on authenticity or other grounds to the court considering all Appendix materials for purposes of summary judgment (Plaintiffs did note the court should not rely on legal conclusions in the insured's affidavits, however).

[4] *See Pahls v. Thomas*, 718 F.3d 1210, 1216 n.1 (10th Cir. 2013) (noting that court may take judicial notice of information from Google Maps). The parties indicated at oral argument they did not object to the court independently consulting Google Earth and Google Maps.

4

The following facts are stated in the light most favorable to the Kobusches, the nonmoving party. The website for Casa Grande Mountain Park states that hikers and bicyclists created the trails unofficially before the mountain was city property. Nat. App. 102. The website states that the mountain officially became a city park in 2010 and now consists of "more than 17 miles of established and marked trails." *Id.* at 103. The website and park map shows two trailheads: one off Peart Road and one off Arica Road. *Id.* at 104-105. Marin, the witness to the accident, has run on the hiking trails in Casa Grande Mountain Park almost every day for the last three years. Kobusch App. 3. Marin indicated that there are actually four trailheads, each with a kiosk displaying information about the park. Kobusch Supp. App. 55. Google Maps shows these additional trailheads (the "Hanna Road Trailhead" and "Spine Trail Loop").

On the day of the accident, Anderson and Kobusch entered the park without going by any trailhead. Kobusch App. 27-28, 32. They turned right off West Tate Road onto South Tate Street, and if the accident had not occurred, they would have turned onto South Tower Road (going by the parking lot for the Peart Road trailhead) as they completed their loop. *Id.* The following shows their route on Google Maps (with the court's annotations and accident label—the black arrows represent the completed route and the red arrows the planned route):

5



Nat. App. 92, 106, 108 (GPS coordinates of accident site); Kobusch App. 8-9, 18-22 (Google Earth images), 27-28, 32 (marking of Anderson's route on Google Earth image).[5]

In August 2022, Marin met the claims adjuster at the parking lot for the Peart Road trailhead, which is accessed by gravel road (labeled Tower Road on Google Maps). Nat. App. 73, 77-86; Nat. Supp. App. 118, 122-123; Kobusch App. 5. Marin took the claims adjuster on Ridge Trail, a hiking trail, to the site of the accident. *Id.*; Nat. App. 86, 88. This trail, however, was *not* the route Anderson and Kobusch took with the ATV

---

[5] *See* **Map of 32.824698, -111.708468**, *Google Maps*, http://maps.google.com (search starting point field for "32.824698, -111.708468"). When zoomed in, Google Maps does not show a gap in the road on South Tate Street as appears in this screenshot.

the day of the accident. Kobusch App. 27-28, 32. The trail map for Casa Grande Mountain Park does not mark Anderson and Kobusch's route at all (part of which goes through what is referred to as "privately-owned land parcels not part of CG Mountain Park" on the trail map). Nat. Supp. App. 104. The following is the relevant portion of the trail map (with the court's annotations based on Anderson's description of the route and the GPS location of the accident site)—the "x" marks the accident spot; the black and red arrows show Anderson and Kobusch's route, completed and uncompleted; and the blue trail is the route taken by Marin and the claims adjuster:



Nat. App. 92, 106, 108 (GPS coordinates of accident site), 104 (trail map); Kobusch
App. 8-9, 18-22 (Google Earth images), 27-28, 32 (marking of Anderson's route on
Google Earth image).

     Google Earth images show the narrow hiking trails (like Ridge Trail) intersecting
the wider Tate Road and Tower Road (the route taken by Anderson and Kobusch).

Kobusch App. 18-22. Marin's pictures show that Tate Road and Tower Road are worn with parallel tire tracks from motor vehicle traffic (unlike the hiking trails), which can also be seen on the Google Earth images. Kobusch App. 12-13, 15-22, 28. Marin said that he sees "trucks, [J]eeps, motorcycles, cars/trucks, [and ATVs]" on the route taken by Anderson and Kobusch "virtually every day." Kobusch App. 3-4. Anderson also indicated that since he bought a winter home in Casa Grande in 2014, spending five months of the year there, he has seen "Jeeps, trucks, motorcycles, other vehicles, [and ATVs]" driving on Tate Road and Tower Road in Casa Grande Mountain Park. Kobusch App. 25-26.

The claims adjuster took pictures in August 2022 of the kiosk at the Peart Road trailhead, which displayed a trail map (depicting trails for hiking, biking, and equestrian use, but not the wider trails used by motor vehicles) and a sign saying, "no motorized vehicles." Nat. App. 80-86. This kiosk is located near the beginning of the hiking trails, seemingly setting out the rules for those trails (rather than the route taken by Anderson and Kobusch). Kobusch App. 8-10. Its signage is not visible from Tower Road. *Id.* at 11-12.

The claims adjuster took pictures of the accident scene in August 2022. Nat. App. 74-75, 90-94. The claims adjuster's GPS readout referred to the accident site as "unnamed road, unnamed road, Casa Grande, AZ." Nat. App. 93. The unpaved road leading to and from the accident site appeared inclined, uneven, and covered with rocks. Nat. App. 74-75, 90-92, 94. It does not appear from the pictures wide enough for two vehicles to pass each other (at that spot at least). *Id.* A fact-finder could certainly find from the picture that the condition of the road in August 2022 made it impassable for a vehicle without four-wheel drive; and the court finds it is a close question whether a fact-finder could determine otherwise. *Id.*

Marin noted that on the day the claims adjuster took the pictures of the road, recent monsoon rains had dumped a lot of rock on the accident scene. Kobusch App. 6. But Marin's photos *also* show rocks on the road at the accident scene (it is unclear when he took these photos). *Id.* at 13-15. Marin explained:

> [I]t appeared to me that rocks had once again accumulated on the road[,] which in my experience is quite common here. Rain flooding also causes this as well. The loose rock is typically pushed aside by vehicles from the center of the road (where it was at the time of the accident) to the side of the road away from the travelled upon area of road[,] which is not uncommon. The day I took these photos, it is clear that rock debris from the higher elevations had slipped/slid onto the road.

*Id.* at 14. Pictures and video from the day of the accident also show a lot of rock on the road. Nat. App. 110-111. Anderson explained:

> On the day of the accident, [Kobusch] and I were only traveling approximately 1-2 miles per hour right before the accident as there had been a fresh [rockslide] only in the area where the accident occurred. These [rockslides] in my experience commonly occur here in the mountains where rocks fall/slide down from higher elevations and builds up on a road before it is cleared away. The vehicle overturned in an area on the road where there is, ironically, a large ledge of bed rock (think of a large flat slab of naturally occurring paved road embedded at the bottom of this Road) which had [rockslide]/mini-avalanche rock resting upon it which the vehicle apparently slipped on and overturned on. While there are normally rocks on the *side* of the Motor Vehicle road where the Can Am overturned, the rock is typically not on the travelled portion of the Motor Vehicle road unless there is monsoon rainfall or a naturally occurring [rockslide]/mini-avalanche which is common on public roads that run through mountains (typically Motorized Vehicle traffic on the road will by driving naturally push the avalanche rocks to the side of the road away from the travelled portion of the road unless the City or someone does so first). . . . I had just travelled the same exact route earlier that very same day with another friend about an hour and a half before me and [Kobusch] had the accident[,] as the [rockslide] occurred at the accident scene between those two trips.

Kobusch App. 29-30. The pictures of the road from the day of the accident show that in addition to being covered in loose rock, the unpaved road itself is bumpy and uneven. Nat. App. 110-111.[6]

The Insurance Companies additionally point to information on the website for the City of Casa Grande, which states motorized vehicles are not "allowed on Casa Grande Mountain." Nat. Supp. App. 118, 120. The website goes on to say that "the trail system on Casa Grande Mountain is only for use by hiking, biking, and equestrian means" and that "[t]he use of motorized vehicles is forbidden and posted on-site." *Id.* An informational video about the park from a local news channel posted on the City's website opens with a woman stating that if "you like hiking" or "going out on off-road vehicles," this episode "is for you." Nat. Supp. App. 119, 123. The woman states that in 2019, the City hired professionals to groom the 17 miles of trails in Casa Grande Mountain Park. *Id.* The woman says that in the coming months, there will be improved signage indicating where people can and cannot operate off-road vehicles (it is unclear when this video was filmed, other than sometime after early 2020, as the Covid-19 pandemic is mentioned). *Id.* She indicates that if a person wants to ride off-road vehicles, there are hundreds of miles of trails available and to check a state governmental website for authorized trails. *Id.* She notes that a person can be cited for using an off-road vehicle on trails meant for hikers, bikers, and horse riders. *Id.* She concludes by going over the kiosk signage in the park stating, "no motorized vehicles," reminding viewers that they can be cited for improper usage and that they should visit the state website to see where vehicles are allowed. *Id.* The woman in the video never specifically says that there are no motor vehicle trails in Casa Grande Mountain Park. *Id.*

The Insurance Companies also point to a video from a City of Casa Grande employee. Nat. Supp. App. 122. The court has no information on where this video can

---

[6] I have included an Appendix at the end of this opinion which contains pictures of the route leading to the accident scene.

be viewed or when it was filmed. The man in the video says that there are two official trailheads in Casa Grande Mountain Park, at Peart Road and Arica Road. *Id.* He goes over the rules on the sign posted at the informational kiosk that says, "no motorized vehicles," explaining that no motorized vehicles are allowed "on our trails" and that "off-road vehicles will have to find a better place to ride," directing viewers to a governmental website containing trails for off-road vehicles. *Id.*

The Insurance Companies also submitted screenshots from the "Casa Grande Mountain Park" Facebook page. One picture, from a June 2021 post, is of a gate with a sign saying, "no motorized vehicles beyond this point." Nat. Supp. App. 113. The post says the gate is at the "[s]outh end of the mountain" (Anderson and Kobusch's route was on the north side of the mountain). *Id.*; *see* Nat. App. 104. There is also a comment on the picture in which the commenter says they "always felt the road trails should have been thought of as an integral part of the park because those trails have been there since the [1950s]." Nat. Supp. App. 113. The other Facebook pictures are from April 2021 and August 2021 and appear to be of a yellow sign that says:

STOP
No Motorized Vehicles
Casa Grande Mountain Park
No Vehicles of Any Kind
Beyond This Point

*Id.* at 114-15. There is no information indicating where this sign is located. When the Kobusches showed Marin these Facebook screenshots, he indicated he had never seen either of these signs in Casa Grande Mountain Park. Kobusch Supp. App. 54.

Finally, the Insurance Companies rely on an affidavit from a City of Casa Grande employee pointing out that the trailhead kiosks say that motorized vehicles are prohibited. Nat. Second Supp. App. 124-25. The employee specifically indicates no motor vehicles are allowed on the route taken by Anderson on Kobusch to and from the accident site. *Id.* The employee cites a city ordinance that provides: "No person in a park shall bring into or operate any motorcycle, car, truck, motorbike, any terrain vehicle, or bicycle,

12

whether motor-powered or not, except in areas and on roads or paths designated for that purpose by the Department Director." *Id.* Although the employee's affidavit states that none of the planned route is legally open to vehicular traffic, Google Maps shows that a car would have to travel on part of the route (about a half mile on Tower Road) to reach the Peart Road trailhead.[7]

The claims adjuster did not take any pictures of signs on Tate Road or Tower Road indicating that motor vehicles are not allowed. *See* Nat. App. 74-96. Indeed, the only picture the claims adjuster took of a sign prohibiting motor vehicles was in the informational kiosk on the hiking trail. *Id.* Anderson and Marin both averred that there are no road signs, fences, gates, chains, or other barricades prohibiting motor vehicle traffic on the wider roads (as opposed to hiking trails) in Casa Grande Mountain Park. Kobusch App. 3-4, 26-28. They also both indicated that people openly drive motor vehicles on these roads in daylight hours; that they have never heard of anyone receiving a citation or warning for driving in the park; and that in their years of living in Casa Grande, they have never heard motor vehicles are prohibited from the park. *Id.* The Facebook page for Casa Grande Mountain Park shows dirt bikes and ATVs driving in the park. Kobusch Supp. App. 67. To the extent the trailhead kiosks say motorized vehicles are not allowed, these signs are all located at the start of hiking trails more than 100 feet from the road and would not be seen by motor vehicle traffic. Kobusch App. 3-4, 8-12, 26-29. After seeing the Facebook screenshots relied on by the Insurance Companies, Marin drove around the perimeter "of the mountain range," taking "the better part of two days to check the main access points to the Park from the perimeter of this very large Park," and did not see any signs prohibiting motor vehicles (other than the paper signs in the trailhead kiosks). Kobusch Supp. App. 54-56. And as noted

---

[7] *See* **Driving Directions from Peart Road to Peart Road Trailhead**, *Google Maps*, http://maps.google.com (follow "Directions" hyperlink; then search starting point field for "Peart Road, Casa Grande, AZ," and destination field for "Peart Road Trailhead").

earlier, the route taken by Anderson and Kobusch the day of the accident (Tate Road and Tower Road) shows up as a road for motor vehicles on Google Maps.

## II.    DISCUSSION

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant [a motion for] summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court "view[s] the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor."[8]

"Interpretation of an insurance policy is a matter of state law."[9] The parties agree that Iowa law applies to interpreting the insurance policy here. Federal courts are "bound by decisions of the highest state court when interpreting state law."[10] "If the highest state court has not decided an issue[, the court] must attempt to predict how the highest court would resolve the issue, with decisions of intermediate state courts being persuasive authority."[11]

Here, the insurance policies exclude underinsured motorist coverage for underinsured vehicles "designed mainly for use off public roads while not upon public roads." The parties agree that the ATV was "designed mainly for use off public roads." They disagree whether the ATV was "upon public roads" at the time of the accident.

---

[8] ***Soo Line R.R. Co. v. Werner Enters.***, 825 F.3d 413, 418 (8th Cir. 2016) (quoting ***Bishop v. Glazier***, 723 F.3d 957, 960-61 (8th Cir. 2013)); *accord* ***Progressive N. Ins. Co. v. McDonough***, 608 F.3d 388, 390 (8th Cir. 2010).

[9] ***McDonough***, 608 F.3d at 390 (quoting ***Stan Koch & Sons Trucking, Inc. v. Great W. Cas. Co.***, 517 F.3d 1032, 1039 (8th Cir. 2008)).

[10] ***Id.***

[11] ***Id.***

The insurance policies do not define "public roads." "[I]nterpretation of policy provisions . . . is a legal question for the court."[12] Iowa courts give undefined terms in an insurance policy their "ordinary meaning."[13] Policy language should be "interpret[ed] . . . from a reasonable rather than a hypertechnical viewpoint"[14] and should not be given "the meaning only a specialist or expert would understand."[15] "The plain meaning of the insurance contract generally prevails."[16] "The cardinal principle is that the intent of the parties at the time the policy was sold" controls.[17]

Because insurance policies are adhesion contracts, ambiguities are resolved in the insured's favor.[18] "A policy is ambiguous if the language is susceptible to two reasonable interpretations when the contract is read as a whole."[19] In other words, "[a]n ambiguity exists if, after the application of pertinent rules of interpretation to the policy, a genuine uncertainty results as to which one of two or more meanings is the proper one."[20]   An

---

[12] *Pierce v. Farm Bureau Mut. Ins. Co.*, 548 N.W.2d 551, 555 (Iowa 1996).

[13] *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 501 (Iowa 2013).

[14] *Id.* at 502.

[15] *A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am.*, 475 N.W.2d 607, 619 (Iowa 1991).

[16] *Boelman*, 826 N.W.2d at 501.

[17] *Just v. Farmers Auto. Ins. Ass'n*, 877 N.W.2d 467, 471 (Iowa 2016) (cleaned up) (quoting *Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 236 (Iowa 2015)).

[18] *Farm Bureau Life Ins. Co. v. Holmes Murphy & Assocs., Inc.*, 831 N.W.2d 129, 134 (Iowa 2013).

[19] *Just*, 877 N.W.2d at 471 (Iowa 2016) (cleaned up) (quoting *Amish Connection*, 861 N.W.2d at 236).

[20] *LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 307 (Iowa 1998) (quoting *A.Y. McDonald*, 475 N.W.2d at 618).

15

insurance policy is not ambiguous merely because the parties or courts disagree as to its meaning—"[t]he contrary interpretation must be reasonable."[21]

The Insurance Companies make two main arguments against finding the path at issue here a "public road." First, they argue that the route was not legally open for vehicular traffic. Second, they argue that the condition of the path rendered it unsuitable for normal, two-wheel drive vehicles, requiring a vehicle designed for off-road use to traverse.

By statute, Iowa defines "roadway" (but not "road") for purposes of the chapter setting out the "laws of the road" as "that portion of a highway improved, designed, or ordinarily used for vehicular travel."[22] "Vehicular travel" includes travel by all-terrain vehicles, as they are a type of "motor vehicle."[23] A "highway" is the entire right-of-way between property lines "open to the use of the public, as a matter of right, for purposes of vehicular traffic" ("street" has the same definition).[24]

The Iowa statutory definition of "roadway" favors the Insurance Companies in their argument that a road must be legally open (a road must be open "as a matter of right") but weighs against them in their argument that a road must be passable by a normal vehicle with two-wheel drive (since ATVs are "vehicles"). It does not necessarily make sense, however, to classify roads in Arizona, where the accident occurred, based

---

[21] *R & J Enterprizes v. Gen. Cas. Co. of Wis.*, 627 F.3d 723, 728 (8th Cir. 2010) (applying Iowa law); *see also Boelman*, 826 N.W.2d at 502. Contrary to the Kobusches' argument otherwise, their affidavit setting forth their understanding of the insurance policy is entitled to little weight and does not establish ambiguity. *See W. Trucking Line, Inc. v. Northland Ins. Co.*, 459 N.W.2d 262, 265 (Iowa 1990). I do not find that the reasonable-expectations doctrine applies. *See id.* The case relied upon by the Kobusches is distinguishable, as it involved an exclusion that swallowed the whole of the coverage. *See Clark-Peterson Co. v. Indep. Ins. Assocs., Ltd.*, 492 N.W.2d 675, 679 (Iowa 1992).

[22] **Iowa Code § 321.1(65).**

[23] **Iowa Code § 321.1(4), (42).**

[24] **Iowa Code § 321.1(78).**

on definitions governing roads in Iowa. I am also mindful that terms in the policy must be given their "ordinary meaning" rather than a "hypertechnical" one. In addition, courts in other jurisdictions have consulted statutory definitions but largely found them nonbinding, reasoning that "statutes setting out the powers and duties of the Department of Motor Vehicles are not universal definitions applicable to all aspects of [state] law or governing terms in [insurance] contracts."[25] That Arizona statutes provide conflicting definitions of "highway" (they do not define "road") depending on the section of code illustrates the problem.[26]

---

[25] ***Popper v. Hartford Fin. Servs. Grp., Inc.***, No. 7:22-CV-148-D, 2023 WL 2999373, at *1 (E.D.N.C. Apr. 18, 2023), *appeal filed*, No. 23-1450 (4th Cir. Apr. 26, 2023); *see also **M.P. ex rel. Zipfel v. Trexis One Ins. Co.***, 652 S.W.3d 685, 690 (Mo. Ct. App. 2022) (noting definition of "public road" from outside the insurance context—e.g., from criminal cases or actions for the abandonment or declaration of a public road—may be helpful but are not controlling); ***Sublett v. Allmerica Fin. Benefit Ins. Co.***, No. 4:17-cv-128-DPM, 2018 WL 457272, at *1 (E.D. Ark. 2018) (noting that interpreting an insurance policy "isn't about the rules of the road," so statutory definitions of "public highways" or streets "are thus ill-fitted to help resolve this dispute"); ***Gittings v. Am. Fam. Ins. Co.***, 888 P.2d 1363, 1365 (Ariz. Ct. App. 1994) (holding that the definition of "public road" cannot be "disposed of by reference to statutory definitions, especially those dealing with the Department of Transportation and the highway system, as opposed to automobile insurance" (cited by ***Auto-Owners Ins. Co. v. Hancock***, No. CV-21-00903-PHX-DLR, 2023 WL 4847597, at *3 (D. Ariz. July 28, 2023); ***Young v. Owners Ins. Co.***, No CV-20-08077-PCT-DWL, 2023 WL 3246990, at *9 (D. Ariz. May 4, 2023) (to be published in the Federal Supplement, Third Series))); ***Lally v. Auto. Mut. Ins. Co. of Am.***, 337 A.2d 243, 245 (R.I. 1975) (distinguishing cases interpreting "public road" related "to legislative enactments regulating the use, maintenance, and care of roads or highways" and outside the insurance context).

[26] For purposes of the title on transportation, "street" or "highway" is defined as the entire right-of-way between property lines "open to the use of the public for purposes of vehicular travel." **Ariz. Rev. Stat. Ann. § 28-101(77)**. Like Iowa, "vehicular travel" includes travel by all-terrain vehicles, as they are a type of "motor vehicle." *Id.* **§ 28-101(3), (50)**. The title on transportation contains an article governing "off-highway vehicles," and for purposes of that article, the definition of "highway" is limited to "conventional two-wheel drive vehicular travel" and excludes "routes designated for off-highway vehicle use." *Id.* **§ 28-1171(3)**.

"In determining the ordinary meaning of undefined terms in a policy, [the Iowa Supreme Court] commonly refer[s] to dictionaries."[27] The Iowa Supreme Court has consulted dictionaries specific to insurance or the law, as well as ordinary dictionaries.[28] Dictionaries generally recognize two senses of the word "public": (1) "of or relating to a government"; or (2) "accessible to or shared by all members of the community."[29] By arguing that "public roads" must be legally recognized by the government, the Insurance Companies ascribe to this first sense of "public." But a grocery store, while on private property, is considered a "public" place in ordinary usage, because it is open to the public.

Several dictionaries include a definition of "road" as "an open way for vehicles, persons, and animals."[30] Other definitions refer to a road's purpose, to use for "traveling

---

[27] *LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 307 (Iowa 1998); *accord Holmes Murphy*, 831 N.W.2d at 134-35 (consulting insurance dictionary); *Pierce v. Farm Bureau Mut. Ins. Co.*, 548 N.W.2d 551, 555 (Iowa 1996) (consulting Black's Law Dictionary); *A.Y. McDonald*, 475 N.W.2d at 619 (consulting insurance dictionaries, as well as a Webster's dictionary definition contained in a Minnesota Supreme Court case); *see also Witcraft v. Sundstrand Health & Disability Grp. Benefit Plan*, 420 N.W.2d 785, 788 (Iowa 1988) (consulting Webster's dictionary); *N. Star Mut. Ins. Co. v. Holty*, 402 N.W.2d 452, 455 (Iowa 1987) (same).

[28] *Id.*

[29] *Public*, **Merriam-Webster**, https://www.merriam-webster.com/dictionary/public [https://perma.cc/7TDP-7DWG]; *see also, e.g.*, *Public*, *Black's Law Dictionary* (11th ed. 2019); *Public*, **Dictionary.Com**, https://www.dictionary.com/browse/PUBLIC [https://perma.cc/6X6J-7NUF]; *Public*, **Oxford Learners Dictionary**, https://www.oxfordlearnersdictionaries.com/us/definition/english/public_1?q=public [https://perma.cc/4RAN-Y3XP].

[30] *Road*, **Merriam-Webster**, https://merriam-webster.com/dictionary/road [https://perma.cc/GRU4-Y7NE]; *accord Road*, **Webster's New Collegiate Dictionary** (1979); *Road*, **Merriam-Webster Unabridged**, https://unabridged.merriamwebster.com/unabridged/road (last visited November 2, 2023) (subscription required); *Road*, **The Free Dictionary**, https://www.thefreedictionary.com/road (last visited November 2, 2023); *see also Road*, **Oxford English Dictionary**, https://www.oed.com/dictionary/road_n?tab=meaning_and_use#25102207 (subscription

18

between places by vehicle."[31]  Several more dictionaries refer to the condition of the road in the most applicable definition, requiring a "smooth or paved surface,"[32] "hard surface,"[33] "hard ground,"[34] or "hard flat surface."[35]  This last group of definitions suggest that the condition of the path should be taken into account.  But some of these definitions are so limited that they could exclude things that are certainly roads—like gravel roads.

In addition to dictionary definitions, the Iowa Supreme Court has also looked to "definitions applied by courts in other jurisdictions."[36]  A handful of courts have had the opportunity to address identical (or nearly identical) policy provisions.

Courts in other jurisdictions have defined a "public road" in the insurance context (based on dictionary definitions and common understanding) as a path "ordinarily used" by the public "for vehicular travel."[37]  Simply because a path is not an official, legal

---

required) (defining road as "[t]he part of surface of such a way intended for vehicles, especially in contrast to a verge or to a pavement or sidewalk for pedestrians").

[31] *Road*, **Cambridge Dictionary Online**, https://dictionary.cambridge.org/us/dictionary/english/road  [https://perma.cc/9S74-AB6B]; *Road*, **Oxford Dictionaries**, https://premium.oxforddictionaries.com/definition/english/road (subscription required).

[32] *Road*, **Dictionary.Com**, https://www.dictionary.com/browse/road [https://perma.cc/4MQF-W83T].

[33] *Road*, **Cambridge Dictionary Online**, note 31, *supra*; *Road*, **Oxford Learners Dictionary**, https://www.oxfordlearnersdictionaries.com/us/definition/english/road?q=road [https://perma.cc/4CYK-B38H].

[34] *Road*, **Collins Dictionary**, https://www.collinsdictionary.com/us/dictionary/english/road (last visited November 2, 2023).

[35] *Road*, **The Britannica Dictionary**, https://www.britannica.com/dictionary/road [https://perma.cc/SA6J-385L].

[36] *See **Holmes Murphy***, 831 N.W.2d at 35; *see also **Just***, 877 N.W.2d at 471-72.

[37] ***Young***, 2023 WL 3246990, at *9 (quoting ***Lally***, 337 A.2d at 245); ***M.P. ex rel. Zipfel***, 652 S.W.3d at 690; ***Cole v. Alfa Mut. Ins. Co.***, 659 So.2d 80, 81 (Ala. 1995) (quoting ***Cannon ex***

road according to the government does not automatically disqualify it from being a "public road" under an insurance contract—courts consider "'the reality of the situation, rather than the legal description of' the area."[38] Courts have held a "road" must have identifiable boundaries of some sort (and cannot be an entire beach or entire desert—but can be the common path of tire tracks through the beach or desert).[39] Road signs,

---

*rel. Cannon v. State Farm Mut. Auto. Ins. Co.*, 590 So.2d 191, 194-95 (Ala. 1991)); *see also Hancock*, 2023 WL 4847597, at *2 (a "public road" is an area a reasonable person would consider "intended for vehicular travel" (quoting *Gittings*, 888 P.2d at 1368)); *Encompass Prop. & Cas. Co. v. Sanko*, No. 07-11095, 2008 WL 11483526, at *3 (E.D. Mich. Sept. 11, 2008) (noting other courts have held a "public road" is a "location[] where public vehicle traffic [i]s regular and accommodated"); *Bourgon v. Farm Bureau Mut. Ins. Co.*, 270 A.2d 151, 153 (Vt. 1970) (a "public road" is "a place 'open temporarily or permanently to public or general circulation of vehicles'" (quoting **Vt. Stat. Ann. tit. 23, § 4(7)**)).

[38] *Young*, 2023 WL 3246990, at *9 (quoting *Gittings*, 888 P.2d at 1366-68) (rejecting argument "that a public road must be, at a minimum, paved and state-sanctioned and part of a highway" and instead considering "whether the area, 'although not officially opened to the public, had been frequently traversed by several local vehicles'" (quoting *id.* at 1366)); *see also M.P. ex rel. Zipfel*, 652 S.W.3d at 690 (holding that a privately owned road in an RV park could constitute a "public road" if freely accessible and commonly used by the general public); *Nationwide Prop. & Cas. Ins. Co. v. Steward*, 323 So. 3d 36 (Ala. 2020) (suggesting that because ambiguities are construed in favor of the insured, a "public road" includes both roads which are "publicly owned" and those that are "publicly used" (quoting 1 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 8.10 (3d ed. 2005))); *State Farm Mut. Auto Ins. Co. v. Johnson*, No. 218225, 2001 WL 674241, at *5 (Mich. Ct. App. May 4, 2001) (per curiam) (privately owned gas station parking lot "public" because it "accommodated public vehicular traffic"); *Leski v. State Farm Mut. Auto. Ins. Co.*, 116 N.W.2d 718, 719-22 (Mich. 1962) (reasonable interpretation of "public road" included path through ditch reached by driving on an incomplete dirt ramp to a highway, when both ramp and highway were under construction and not legally open for traffic, based on evidence that vehicles commonly followed same route in place of yet-to-be-completed interchange; at least one other person had previously driven route in view of construction workers and was not prevented from taking the route or otherwise told to stop; and another commonly used path in the area that required driving on fill dirt due to construction *was* state sanctioned). Two courts (in older cases) have held that for *private* property to be a "public road," the public must legally have a right to access the road through dedication by the landowner or through prescription. *See Sproles v. Am. States Ins. Co.*, 578 So. 2d 482, 483 (Fla. Dist. Ct. App. 1991); *Livingston v. Nationwide Mut. Ins. Co.*, 295 F. Supp. 1122, 1126 (D.S.C. 1969), *aff'd*, 419 F.2d 837 (4th Cir. 1970) (per curiam).

[39] *Young*, 2023 WL 3246990, at *9-10; *M.P. ex rel. Zipfel*, 652 S.W.3d at 690; *Bloomquist v.*

markings, and barricades are relevant to determining whether a reasonable person would think the path intended for public vehicular travel.[40]  A few courts have found relevant whether the accident occurred outside the vehicle's "ordinary place of usage," reasoning that the policy's intent is to exclude coverage when an off-road vehicle is being used for its normal purpose (e.g., a tractor in a field) but to provide coverage when an off-road vehicle is outside its normal usage (e.g., a tractor traveling from one farm to another).[41] A few courts have also considered the purpose of the area where the accident occurred, distinguishing a path "to get from one location to another" (a road) from a place to park upon reaching one's destination (a parking lot).[42]

---

*NWNL Gen. Ins. Co.*, 421 N.W.2d 416, 419 (Minn. Ct. App. 1988).

[40] *Gittings*, 888 P.2d at 1368 (defining public road as path "reasonable person . . . , having cognizance of all pertinent road signs and markings, would consider to be intended for vehicular travel"); *accord Hancock*, 2023 WL 4847597, at *2; *see also Young*, 2023 WL 3246990, at *9 (holding "whether there are any contraindications of vehicular use" relevant to "public road" determination but rejecting "that any public road *must* have road signs, markings, and improvements" (emphasis added)); *M.P. ex rel. Zipfel*, 652 S.W.3d at 691 (in determining road in private RV park was not a public road, noting that one end of the road was barricaded some of the time, that guests had to check in with the office, and that emergency and delivery vehicles did not freely drive on the road); *State Farm Mut. Auto. Ins. Co. v. Stockley*, 168 S.W.3d 598, 603 (Mo. Ct. App. 2005) (holding that airport tarmac was not "public road" after noting "the general public is prohibited from entering unless they are properly credentialed based on their need to be in the area"); *Sproles*, 578 So. 2d at 483 (affirming jury finding that ATV and dirt bike trails on private property commonly used by the public were not a "public road" when owner testified that trespassers knocked down the "no trespassing" signs and that he had informed police of the trespassers, and jury could find public had not "perfected" prescriptive rights to the land); *but see Steward*, 323 So. 3d at 38-39  (when parties agreed ATV trails were "roads" but disputed whether they were "public," holding ATV trails in publicly owned park, maintained at public expense, and open to the public for recreational purposes were "public," even though public had to pay a fee and sign a waiver to access the trails).

[41] *See Country Mut. Ins. Co. v. Leffler*, 705 F. App'x 549, 550 (9th Cir. 2017); *Johnson*, 2001 WL 674241, at *5; *Leski*, 116 N.W.2d at 721-22.

[42] *Popper*, 2023 WL 2999373, at *5; *see also M.P. ex rel. Zipfel*, 652 S.W.3d at 691 (in determining road in private RV park was not "public road," finding relevant that "public does not drive through the RV Park as a shortcut to access a public road").

Applying these principles, courts have held the following do not constitute a "public road": a ditch or other strip of land running parallel to a paved road;[43] the front yard or driveway of a private residence;[44] a sidewalk;[45] a bike and golf cart path;[46] a dirt racetrack on private property;[47] an airport tarmac;[48] a road in a private RV park with restricted access to the general public;[49] and an entire beach frequently driven on by vehicles but also used for camping and other activities.[50] On the other hand, when commonly used by the public for vehicular traffic, courts have held the following are "public roads": the frozen surface of a lake;[51] the common route from a dirt ramp to a ditch used in place of the under-construction, yet-to-be completed highway interchange;[52] and a "sand highway" consisting of tire tracks through sand.[53] Courts have split on whether a parking lot is a "public road."[54]

---

[43] *Leffler*, 705 F. App'x at 550; *Gittings*, 888 P.2d at 369; *Cole*, 659 So.2d at 81.

[44] *Cannon*, 590 So. 2d at 195; *Payne v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 441 So. 2d 886, 887-88 (Ala. 1983) (per curiam).

[45] *Lally*, 337 A.2d at 245-46.

[46] *Sanko*, 2008 WL 11483526, at *3.

[47] *Livingston*, 295 F. Supp. at 1123, 1126.

[48] *Stockley*, 168 S.W.3d at 603.

[49] *M.P. ex rel. Zipfel*, 652 S.W.3d at 691.

[50] *Bloomquist*, 421 N.W.2d at 418-19.

[51] *Bourgon*, 270 A.2d at 153;

[52] *Leski*, 116 N.W.2d at 719-22.

[53] *Young*, 2023 WL 3246990, at *2, *9-10.

[54] *Compare Popper*, 2023 WL 2999373, at *1 (hospital parking lot is not "open public street or highway" for purposes of accidental death benefits), *Sublett*, 2018 WL 457272, at *1 (holding that gravel parking lot for city-owned park with dirt ATV trails is not "public road"), *Thompson v. Gov't Emp. Ins. Co.*, 592 P.2d 1284, 1285 (Ariz. Ct. App. 1979) (stating without analysis

A few courts have also addressed whether ATV trails are "public roads." In *Hale v. Allied Insurance*, the Tenth Circuit held that a "4x4 Trail" on property owned by the federal government was not a "public road," since it was "barely passable" even for off-road vehicles, with steep climbs requiring assistance to traverse.[55] The court emphasized the condition of the trail (which it described as an "obstacle course") and noted that it was not addressing whether an ATV trail "indistinguishable from roads" would constitute a "public road."[56] In *Hancock*, the District of Arizona held that a dirt road through a national forest was not a "public road," since maps described it as "not maintained for passenger cars"; officers responding to the accident (between a dirt bike and an ATV) had to use a barge and ATV to reach the site; and large rocks and boulders on the trail prevented the insurance adjuster from reaching the scene in a large SUV[57] with four-wheel drive.[58] The court granted summary judgment to the insurance company because no reasonable person "would consider the road intended for [normal] vehicular travel."[59] Consistently with *Hale* and *Hancock*, the Ninth Circuit has noted (when addressing whether a ditch is a public road) that a "reasonable insured would understand 'public road' to exclude terrain that is suitable only for specially designed vehicles like ATVs."[60]

---

that a "vacant lot utilized for 'dirt bike' riding" is not a "public road"), with **Johnson**, 2001 WL 674241, at *5-6 (holding that gas station parking lot is "public road"; the dissent disagreed).

[55] 465 F. App'x 757, 758-60 & n.4 (10th Cir. 2012).

[56] *Id.* at 759-60 & n.5.

[57] Sports Utility Vehicle.

[58] 2023 WL 4847597, at *1, *3.

[59] *Id.* at *3.

[60] *Leffler*, 705 F. App'x at 551.

In *AAA Member Select Insurance Co. v. VandenEykel*, the Illinois Appellate Court held that a groomed public snowmobile trail was a "public road."[61] The court held the trail was "public" because at the time of the accident, it was open for travel by anyone with a permit, and the state owned and maintained the trail.[62] The court held "road" could reasonably be interpreted to include the trail, as it was an open "way for the passage of vehicles"—"both those intended primarily for off-road use and those routinely driven mostly on public highways and roads (however defined), such as trucks and motorcycles."[63] The only evidence of the trail's use appeared to be from the statutory definition of snowmobile trail, stating such trails were "capable of travel by a 2-wheel, 4-wheel [*sic*] conventional vehicle designed for road use"; and from a trail map indicating the trail was "open to [off-road vehicles] of all sizes including trucks, motorcycles, and [ATVs]."[64] The court did not discuss the trail's condition, other than stating it had an adequate amount of snow at the time of the accident, was a former railroad, and was wide enough for one lane of traffic.[65]

Here, viewing the facts in the light most favorable to the Kobusches, the route at issue was on public land (although perhaps not publicly maintained). It was frequently used by the public for vehicular travel—and had been for years. Google Maps showed the route as a road open for vehicular traffic. No barricades or signs prohibited public use of the route. Information on the City's website prohibiting the use of motor vehicles in the park could be interpreted as applying only to the hiking trails, which is consistent with the only signs prohibiting vehicles being posted at hiking trailheads. The only way

---

[61] No. 2-17-0092, 2017 WL 5045601, at *1-2, *11 (Ill. App. Ct. Nov. 1, 2017)

[62] *Id.* at *7.

[63] *Id.*

[64] *Id.* at *2 ("[*sic*]" in original).

[65] *Id.* at *2, *10.

a person would know that the City of Casa Grande did not consider the route open for vehicular travel would be to call the city and ask—as counsel for the Insurance Companies did.[66]  And even then, it seems the City considered at least a portion of the route open for public vehicles, since they necessarily needed to travel on Tower Road to reach the trailhead parking lot.

A factfinder could determine that the route at issue was "public."  The Insurance Companies argue that just because a road is on public land does not render it a "public road."  They give the example of a gated road in a national park open only to forest rangers.  But as this illustration demonstrates, the public's use of the road may be more determinative than its legal status.  Both dictionary definitions and caselaw establish that "public" can mean accessible to the general public.  Here, a reasonable person could conclude that the route was open for public vehicular traffic, given the frequent use by the public in practice, coupled with the lack of signs or barricades prohibiting this use.  Thus, that the City of Casa Grande considers the route closed to public vehicular traffic is not determinative.

The Insurance Companies argue that "public roads" must be interpreted as a single phrase, rather than as two independent terms ("public" and "roads").  They argue that "public roads" is a term of art meant to convey government-owned roads that are legally open.  Therefore, they argue that the affidavit from the city employee is controlling.  Some support for their argument can be found in an online transportation dictionary defining "public roads" as "[r]oads or streets under the jurisdiction of and maintained by a public authority *and* open to public travel."[67]  But given the varying meanings of public,

---

[66] Even consulting the city ordinance would not allow a person to determine whether the route was "legally" open, since the ordinance states roads in public parks are open for vehicular travel if "designated for that purpose by the Department Director."  Nat. Second Supp. App. 124-25. Based on common usage and the lack of signs, a reasonable person could assume that the route had been designated for vehicular traffic by the Department Director.

[67] *Public roads*, Transportation Research Thesaurus, **National Academies Sciences Engineering Medicine**, https://trt.trb.org/term/92850 [https://perma.cc/NY5V-55A3] (emphasis added).

it is at least ambiguous whether "public" connotes public use, as opposed to public maintenance and ownership. In addition, I note that a factfinder could determine the route *was* under the city's jurisdiction and open to public travel, despite the city employee's affidavit (the court has no information on whether the city maintained the route or not). Overall, a reasonable person considering the facts here could conclude that the route at issue met the "public" portion of "public road," despite evidence that the city did not consider the route legally open for vehicular traffic.

I find it a closer question whether the path can reasonably be considered a "road" under the policy. Viewing the facts in the light most favorable to the Kobusches, the route met the basic definition of a path "ordinarily used for vehicular travel." The path had identifiable boundaries consisting of worn tire tracks, and even showed up as a road on Google Maps. There is no evidence of road signs or markings one way or the other (either prohibiting or directing traffic). The path leading to the accident site was part of a recreational "loop," and it would never be considered the most direct route to get from one place to another. I do not find this factor dispositive, however, as there are scenic byways that are certainly "public roads." But the fact that the route was a recreational loop dovetails into another factor some courts have considered: whether the ATV was outside its ordinary place of usage.

The insurance policy excludes coverage for accidents involving vehicles "designed mainly for use off public roads while not upon public roads." The parties (and the court) agree that the ATV in the accident here was designed for use off public roads, suggesting that the "areas where ATVs are designed [mainly] to be used do not count as 'public roads.'"[68] Thus, an ATV trail is *not* a public road, even though it is a path "ordinarily used for vehicular travel." This interpretation is consistent with *Hale* and *Hancock*.

---

[68] *Leffler*, 705 F. App'x at 550.

What about a trail used primarily by ATVs and other off-road vehicles but also traversed by larger SUVs? The Insurance Companies argue that the parties intended to exclude such a trail. They argue that the policy is designed to provide coverage when ATVs are outside their normal place of usage—for example, when they are driving from a residence to the start of a trail—but not when ATVs are engaged in the riskier act of driving on a scenic road unsuitable for a two-wheel drive vehicle.

The Kobusches respond that there is no requirement that a "public road" be passable by a two-wheel drive vehicle. The Kobusches give examples of rural "public roads" in Iowa with deep ruts that would be difficult for a normal sedan to pass. The court agrees that there are unquestionably "public roads" in national parks and remote areas of the country (often leading to hiking trailheads) that require a vehicle with four-wheel drive (due to mud, snow, or simply the conditions of the road itself). But the court also agrees with the Insurance Companies that the condition of the path here, and the types of vehicles able to travel on it, are relevant to whether it was a "public road."

Ultimately, I find a fact issue exists as to whether the path here was a "road." There is some evidence that the route was not used solely by ATVs and off-road vehicles (distinguishing it from the trails in *Hale* and *Hancock*).[69] Marin averred that he sees vehicles on the path almost every day, which includes "cars/trucks," and Anderson averred he has seen trucks and "other vehicles." But reasonable minds could differ on the extent that vehicles other than those "specially designed" for off-roading (which I find includes Jeep Wranglers) were able to drive on the path leading to the accident scene (if at all). Pictures show an inclined, bumpy one-lane road covered in large rocks (fist-sized and a few even bigger). As the Insurance Companies noted at oral argument, the terrain (after a rockslide) was treacherous enough to tip an ATV traveling one to two

---

[69] At oral argument, the Insurance Companies questioned why Marin and the insurance adjuster hiked to the accident site rather than drive to it. But there is no evidence the insurance adjuster attempted to drive to the scene and was unsuccessful (as in *Hancock*). A factfinder could infer Marin simply showed the insurance adjuster how he reached the scene on the day of the accident.

miles an hour.  Thus, there is a genuine dispute of material fact whether the ATV was traveling on a "public road" at the time of the accident.

### III.    CONCLUSION

The court **GRANTS** the Kobusches' motion for leave to file an amended supplemental affidavit (Doc. 42), and the clean version attached to the motion at Doc. 42 is deemed filed (Doc. 42 at 15-18).  The court **GRANTS IN PART AND DENIES IN PART** the Insurance Companies' motions for summary judgment (Docs. 19, 20).

**SO ORDERED** on November 21, 2023.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

28

*COURT'S APPENDIX*

Claims Adjuster Photo (August 2022):



Marin Photo (Unclear Date):



Day of Accident Photo:

